PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  4:19CR0715 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DERWIN NORMAN, JR., | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 92] |

Pending is Defendant Derwin Norman, Jr.'s Motion for Sentence Reduction Under

18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (ECF No. 92), filed *pro se*.[1]  The

Government has filed a response in opposition (ECF No. 101).[2]  Defendant has not filed a reply

memorandum in support of the motion.  For the reasons that follow, Defendant's motion is

denied.

---

[1]  The Court appointed the Federal Public Defender for Defendant pursuant to
Amended General Order No. 2020-07-2.  *See* Non-document Order, dated April 18, 2024.
On August 7, 2024, the Federal Public Defender filed a Notice (ECF No. 97) that
provides, in relevant part, that counsel has "no intent to supplement Mr. Norman's pro se
motion.  However, counsel respectfully requests to reserve the right to file a reply to any
response in opposition filed by the government."

[2]  In compliance with a prior Marginal Order (ECF No. 100) and Electronic Filing
Policies and Procedures Manual (Feb. 10, 2020) at §§ 19 and 24, the Government filed
the U.S. Marshals Service ("USMS") Incident Report (ECF No. 102-1), Bureau of
Prisons ("BOP") Health Services Records of Defendant (ECF No. 102-2), and BOP
Psychological Records of Defendant (ECF No. 102-3) under seal.

(4:19CR0715)

## I. Background

In 2021, the Court accepted Defendant's conditional plea of guilty pursuant to the

11(c)(1)(C) Plea Agreement (ECF No. 89) to conspiracy to commit sex trafficking of a minor

between February 28, 2017 and March 8, 2017, in violation of 18 U.S.C. § 1594(c).  *See* Non-

document Minutes of Proceedings dated November 4, 2021.

Based upon a total offense level of 33 and a criminal history category of V, the guideline

imprisonment range was 210 months to 262 months.  After considering the sentencing factors

under 18 U.S.C. § 3553(a), the Court sentenced Defendant in November 2021 to a

below-guidelines term of 92 months of imprisonment.  The Court also imposed a lifetime term of

supervised release.  *See* Judgment in a Criminal Case (ECF No. 90); Non-document Minutes of

Proceedings dated November 4, 2021.

Defendant is currently serving his prison sentence at USP Beaumont ("Beaumont").[3]

Defendant alleges that the Court should reduce his sentence to time served due to extraordinary

and compelling reasons.

## II. Legal Standard for Seeking Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391,

132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the

Director of the BOP or the defendant.  The Sixth Circuit has provided that district courts must

---

[3]  *See* http://www.bop.gov/inmateloc/ (last visited March 13, 2025).  Beaumont is
a high security U.S. penitentiary.  Defendant's anticipated release date is November 27,
2025.

(4:19CR0715)

follow a "three-step test" for determining whether to grant a defendant's motion for

compassionate release.  *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).

> At step one, a court must "find[ ]" whether "extraordinary and compelling
> warrant" a sentence reduction.  At step two, a court must "find[ ]" whether "such
> a reduction is consistent with *applicable* policy statements issued by the
> Sentencing Commission."  The Commission's policy statement on compassionate
> release resides in U.S.S.G. § 1B1.13.  Thus, if § 1B1.13 is still "applicable,"
> courts must "follow the Commission's instructions in [§ 1B1.13] to determine the
> prisoner's eligibility for a sentence modification and the extent of the reduction
> authorized.  At step three, "§ 3582(c)[(1)(A)]* instructs a court to consider any
> applicable § 3553(a) factors and determine whether, in its discretion, the reduction
> authorized by [steps one and two] is warranted in whole or in part under the
> particular circumstances of the case."

*Id.* at 1107-1108 (alterations and emphasis in original) (citations omitted).  In considering a

compassionate release motion, "district courts may deny compassionate release motions when

any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the

others" but must "address all three steps" if granting such a motion.  *United States v. Elias*, 984

F.3d 516, 519 (6th Cir. 2021).

The Sentencing Commission amended the policy statement in § 1B1.13 to encompass

inmate-filed motions for compassionate release.  U.S.S.G. § 1B1.13 (2023).  As such, district

courts analyzing motions filed by prisoners after November 1, 2023, consider § 1B1.13 in their

analysis.  *United States v. Whitworth*, No. 1:23CR0561-4, 2023 WL 8190131, at *2 (N.D. Ohio

Nov. 27, 2023) ("A new United States Sentencing Commission policy statement now applies to

18 U.S.C. § 3582(c)(1)(A) motions brought by inmates after November 1, 2023."); *United States*

*v. Harris*, No. 23-5187, 2023 WL 10294625, at *2 (6th Cir. Dec. 4, 2023) (considering the

updated policy statement).  As amended, § 1B1.13(b) states that "[e]xtraordinary and compelling

(4:19CR0715)

reasons exist under any of the following circumstances or a combination thereof," and discusses

when the medical circumstances of the defendant, the age of the defendant, the family

circumstances of the defendant, the defendant's victimization in custody, and other reasons may

constitute extraordinary circumstances.  U.S.S.G. § 1B1.13(b)(1)-(5).

### III. Discussion

### A.

As a threshold matter, a defendant is eligible to seek compassionate release from a court

only after he has exhausted all administrative rights to appeal the BOP's failure to bring a motion

on his behalf *or* thirty days have elapsed since requesting that the warden of his facility initiate

such action.  18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir.

2020) ("Prisoners who seek compassionate release have the option to take their claim to federal

court within 30 days, no matter the appeals available to them.").

Here, Defendant claims he submitted a request for compassionate release to the warden

on February 21, 2024.  *See* ECF No. 92 at PageID #: 465.  He did not, however, include a copy of

the request to show he administratively exhausted his claim prior to filing the within motion.  In

addition, the BOP has no record of Defendant ever submitting a request for compassionate

release.  *See* ECF No. 101 at PageID #: 494; *Alam*, 960 F.3d at 834 ("When 'properly invoked,'

mandatory claim-processing rules 'must be enforced.' " (quoting *Hamer v. Neighborhood Hous.

Servs. of Chi.*, 138 S. Ct. 13, 17 (2017))).  Accordingly, the Court denies Defendant's Motion

(ECF No. 92) because he has not satisfied the mandatory statutory exhaustion requirement to

seek compassionate release.  *See id.* at 832 ("[B]ecause this exhaustion requirement serves

4

(4:19CR0715)

valuable purposes . . . and because it is mandatory . . ., we must enforce it"); *United States v.*
*Burress*, No.: 3:14-CR-85-KAC-DCP-2, 2023 WL 4554525, at *2 (E.D. Tenn. July 15, 2013)
(denying motion for compassionate release and ruling that even if defendant had properly
administratively exhausted her claim, the motion would be denied on the merits based on a
balancing of the 18 U.S.C. § 3553(a) sentencing factors).

Even assuming *arguendo* that Defendant satisfied the administrative exhaustion
requirement, his motion also fails on the merits.  The Court finds for the reasons that follow that
he does not present extraordinary and compelling reasons for release and the § 3553(a) factors do
not warrant a sentence reduction under the particular circumstances of this case.

**B.**

**1.**

Defendant is a 29-year-old man.  He claims the following present extraordinary and
compelling reasons to reduce his sentence:  (1) a sexual assault perpetrated by corrections
officers at USP Canaan, a high security U.S. penitentiary with an adjacent minimum security
satellite camp; (2) a physical assault at the Northeast Ohio Correctional Center ("NEOCC");
(3) he had already served over two years in prison for his related state convictions; (4) the
psychological effects of being placed in solitary confinement; and, (5) several deaths in his
family and his family's need for him to provide them with assistance.  *See* Information for
Compassionate Release (ECF No. 92-2).  The Court sees it differently.

5

(4:19CR0715)

Defendant alleges that he was both physically and sexually assaulted by prison staff. The BOP has no record of Defendant reporting a sexual assault and Norman has not provided any proof, beyond his own allegations regarding such an assault. Indeed, an April 4, 2024 psychology services assessment from the BOP states that Defendant has "[n]o history of sexual victimization in prison." ECF No. 102-3 at PageID #: 768. The Assistant U.S. Attorney that filed the Response in Opposition also reached out to the U.S. Attorney's Offices in all districts where Defendant has been incarcerated for the within offense, and none had any records of any reported sexual assaults. *See* ECF No. 101 at PageID #: 498.

With respect to the physical assault, a July 2020 Incident Report (ECF No. 102-1) demonstrates that it was Defendant, then a USMS detainee housed at NEOCC, who had initially assaulted a correctional officer ("C/O") prior to the use of force. The report indicates that Defendant had jumped up from his bunk and punched the C/O in the face multiple times. Defendant was restrained and suffered facial bruising and lacerations. According to the Government, the USMS confirmed that there was an internal investigation into this incident, and it was deemed a "Reactive Use of Force, due to staff being assaulted." *See* ECF No. 101 at PageID #: 499. Defendant has not provided any additional documentation to the contrary.

Next, Defendant argues he should be released early because he had already served over two years in prison for his related convictions in state court discussed in Section III.C. below. Defendant contends that as of the filing of the Motion (ECF No. 92), he had "**SERVED 81 MONTHS OF COMBINED INCARCERATED TIME FOR THE SINGLE CRIMINAL ACT HE ENGAGED IN**." ECF No. 92-2 at PageID #: 475 (capitalization and bold in original).

6

(4:19CR0715)

But Defendant was sentenced in state court on charges for illegal use of a minor in nudity-oriented material and compelling prostitution in June 2017.  He was released from state prison in July 2019, well before he was sentenced in the case at bar in November 2021.  Accordingly, this circumstance was in existence at the time of sentencing, and the Court already took this into account when giving Defendant a below-guidelines term of 92 months of imprisonment on the federal charge.  The Court of Appeals for the Sixth Circuit has stated that "facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021), *cert. denied*, --- U.S. ----, 142 S. Ct. 2771 (2022).  A contrary rule, according to the Sixth Circuit, would "render[ ] the general rule of finality and the extraordinary-and-compelling-reasons requirement 'superfluous, void or insignificant.' " *Id.* at 569 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Defendant also contends he should be released early because of the psychological effects of being placed in solitary confinement.  This is not an extraordinary and compelling reason under U.S.S.G. § 1B1.13 (2023).  Moreover, Defendant concedes that he has been put in solitary confinement because he "COULD HAVE SIMPLY MADE BETTER DECISIONS REGARDING BEHAVIOR."  ECF No. 92-2 at PageID #: 476 (capitalization in original).  The Sixth Circuit has found that being placed in solitary confinement due to disciplinary issues, without further evidence, cannot constitute a basis for a reduced sentence.  *See United States v. Gordon*, Case No. 23-3188, 2024 WL 1005772, *2 (6th Cir. March 4, 2024), *pet. for cert. pending*, No. 24-6603, 2024 WL 1005772 (Feb. 20, 2025).

(4:19CR0715)

Finally, Defendant makes conclusory claims that he has had some deaths in the family since being incarcerated; and because of those deaths, his family members are depending on him to provide care to vulnerable family members. *See* ECF No. 92-2 at PageID #: 476-77. None of these assertions are supported by any type of documentation, including letters from the very family members who supposedly need his assistance. This cannot serve as a basis for a sentence reduction. *See United States v. Foster*, Case No. 5:18CR0472, 2024 WL 3715442, at *2 (N.D. Ohio Aug. 8, 2024) (denying motion for sentence reduction, in part, because defendant "has not proven that he would be the only available caregiver for his son or that he would be considered by a court as a suitable caregiver").

Furthermore, a General Educational Development Certificate ("GED") is a minimal educational buffer against poverty and ignorance. Defendant attended GED classes from 2017 to 2019, but he did not earn his GED. As of August 2021, he planned to continue his education by obtaining his GED and studying culinary arts. A July 12, 2024 psychosocial interview of Defendant by the BOP reveals, however, "Mr. Norman has not obtained his GED but stated that he wants to pursue it." ECF No. 102-3 at PageID #: 754. Defendant's failure to earn his GED demonstrates he is no position to take on the role as caregiver to family members.

Defendant's work towards acquiring his GED is a cornerstone of his rehabilitation. Obtaining a GED, has several benefits, including better employment opportunities[4] and higher

---

[4] Better educated applicants are more likely to obtain jobs that offer benefits such as health insurance, paid leave, and retirement. *Why Education Matters to Health: Exploring the Causes*, CTR. ON SOC'Y AND HEALTH (Feb. 13, 2015).

(4:19CR0715)

self-confidence.[5]  The average earnings for someone with a high school diploma or its equivalent

are significantly higher than someone without that minimal level of education.[6]  Persons with a

high school diploma or its equivalent have a lower rate of unemployment.[7]  Furthermore,

successfully earning a GED will entitle Defendant to a sense of accomplishment and foster a

renewed commitment to his personal growth.  This enhanced self-esteem and increase in

opportunities will encourage a more positive lifestyle[8] that reduces the need for drug abuse and

other illegal behaviors, such as drug trafficking.[9]  Attaining a GED will have a positive influence

on Defendant's family.  For example, obtaining a GED "consistently [has] reduced the prospects

---

[5]  Education boosts confidence.  Educated individuals gain communication skills, improve decision-making, meet challenges, receive feedback, and improve self-esteem through furthering education.  *Five Ways Education Can Improve your Confidence*, UNIV OF ESSEX (Dec. 2, 2016).

[6]  Tim Stobierski, *Average Salary by Education Level*, NORTHEASTERN UNIV. (June  2, 2020), https://bachelors-completion.northeastern.edu/news/average-salary-by-education-level/.

[7]  *Id*.

[8]  *See, e.g.*, people who cannot find steady employment because they are illiterate or lack job skills will likely have difficulty staying away from drugs after leaving treatment.  Prendergast, Michael L., Ph.d., M Douglas Anglin, Ph.D, and Jean Wellisch, Ph.D, *Treatment for Drug-Abusing Offenders Under Community Supervision*, 59, 69 Dec. Fed. Prob. 66, 69 (1995).

[9]  Succeeding academically tends to develop positive attachments to school and facilitates commitment to pro-social lifestyles that reduce drug abuse.  Kenneth S. Kendler, *et al.*, *Academic Achievement and Drug Abuse Risk Assessed Using Instrumental Variable Analysis and Co-relative Designs*, JAMA PSYCHIATRY (Nov., 2018).

9

(4:19CR0715)

of being poor/near poor (family income under 125% of the poverty line) or low income[.]"[10] It

also has been shown to have positive health effects on individuals and families, too.  Those with

at least a high school education tend to eat better, exercise more regularly, and, as a result,

decrease the occurrences of common avoidable illnesses.[11]  Improved education also prompts

access to employment opportunities that offer benefits such as health insurance, paid leave, and

retirement.[12]

**2.**

U.S.S.G. § 1B1.13 (2023) is the applicable policy statement issued by the United States

Sentencing Commission specifying the definition of "extraordinary and compelling reasons."  As

stated above, it defines specific medical, age, and family circumstances as possibly justifying a

sentencing reduction under this statute, and further authorizes a sentencing reduction based on an

extraordinary and compelling circumstance identified by the BOP.  While allegations that

Defendant was both physically and sexually assaulted can constitute "extraordinary and

compelling reasons" under the Guidelines, *see* § 1B1.13(b)(4), it is Norman's burden to prove

these circumstances exist.  Section 1B1.13(b)(3)(D) states that extraordinary and compelling

reasons exist when the defendant would be the only available care giver for an immediate family

---

[10]  Andrew Sum *et al.*, *The Impacts of the GED Credential and Regular High School Diploma on the Employment, Unemployment, Weekly and Annual Earnings,and Income Experiences of Native-Born Adults (16-74) in the U.S. in 2000, 2009, and 2010,* CTR. FOR LABOR MARKET STUDIES NORTHEASTERN UNIV. (June 2012).

[11]  *Why Education Matters to Health: Exploring the Causes*, CTR. ON SOC'Y AND HEALTH (Feb. 13, 2015).

[12]  *Id*.

(4:19CR0715)

member.  Under the "Other Reasons" provision, § 1B1.13(b)(5), a court may consider "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  For the reasons set forth above, Defendant has failed to show that the Court should reduce his sentence based on § 1B1.13.

**3.**

Accordingly, Defendant does not present an extraordinary and compelling reason, independently or in combination, for release within the meaning of § 3582(c)(1)(A).  Thus, Defendant has not presented "extraordinary and compelling" reasons for release under 18 U.S.C. § 3582(c)(1)(A)(i).

**C.**

Even assuming that Defendant could establish that he exhausted his administrative remedies and extraordinary and compelling reasons exist in this case, compassionate release is denied based on a balancing of the 18 U.S.C. § 3553(a) sentencing factors.  In addition to examining whether extraordinary and compelling reasons warrant a reduction in sentence, courts must consider all pertinent § 3553(a) factors and whether the inmate poses a danger to the community.  *See United States v. Tomes*, 990 F.3d 500, 504 (6th Cir. 2021) ("[W]e can affirm a [district] court's denial of a defendant's compassionate release motion based on the [district] court's consideration of the § 3553(a) factors alone."), *cert. denied*, 142 S. Ct. 780 (2022); *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and

11

(4:19CR0715)

compelling' reasons would otherwise justify relief.").  Releasing Defendant would not protect the public, provide adequate deterrence, promote respect for the law or provide just punishment for past misconduct.

The Court begins with the nature and circumstances of the offense.  Defendant engaged in a conspiracy to force a 15-year-old girl into prostitution in February and March 2017.  In furtherance of this conspiracy, Defendant and his co-coconspirators manipulated this minor with marijuana, Xanax, cocaine and heroin, took illicit photographs of her, and then decided to advertise this minor for commercial sex.  Defendant then orchestrated various meetings with potential "clients" for this minor – while being fully aware that she was a minor.  *See, e.g.*, ECF No. 89 at PageID #: 444-46.  Conspiracy to commit sex trafficking of a minor – an activity that hurts a child – presents a grave danger to the health, well-being, and safety of others in the Northeast Ohio community.  The history and characteristics of Defendant also leave no doubt that compassionate release is not appropriate.

Defendant's criminal history compounds the seriousness of the conduct at issue in the case at bar.  After his arrest on the instant federal offense, Defendant refused drug testing by the U.S. Pretrial Services Office.  He refused to admit to what he would test positive for, and Defendant was having very extreme withdrawal behaviors during his interview with the Officer on November 21, 2019.  Moreover, he has several previous convictions which counted towards the calculation of his criminal history score.  In June 2017 (prior to being sentenced in the present case), he was convicted in state court for conduct related to the offense in the case at bar, *i.e.*, illegal use of a minor in nudity-oriented material and (2) compelling prostitution.  Defendant was

12

(4:19CR0715)

also convicted of escape.  He attempted to flee from a police officer on multiple occasions after being discharged from the hospital.  On July 5, 2019, Defendant was released from prison and post release control commenced.  During the very first week after completing his term of imprisonment, Defendant was located by GPS at a water park, which was prohibited by the terms of his release.  He also tested positive for drugs following his release from prison.

Defendant was also convicted in state court for possession of heroin in June 2017.  He initially refused to give his name to the police officers after a traffic stop because he had a warrant for his arrest.

In April 2017, Defendant was convicted in state court for petty theft.  He took the victim's credit card without permission and made a purchase in the amount of $202.83.

In August 2016, Defendant was convicted in state court for domestic violence.  He threatened family members with a gun while intoxicated.

Finally, Defendant (at the age of 18) was convicted in January 2014 in state court for driving under the influence.  Defendant was subsequently found in contempt of court three times and had his probation extended.  Defendant was also convicted in state court for falsification.  Thereafter, he violated his probation in that case.

Defendant's records indicate that while in BOP custody he continues to have difficulty following the rules and restrictions placed upon him.  As of July 2024, he had "received incident reports for refusing work/program assignment (306) x2 , assaulting w/o serious injury (224), phone abuse-disrupt monitoring (297) x3, refusing to obey an[ ] order (307), fighting with

13

(4:19CR0715)

another person (201), being absent from assignment (310), being in unauthorized area (316), use of drugs/alcohol (112), and stealing (219)."  *See* ECF No. 102-3 at PageID #: 754.

The nature and circumstances of the serious offense in the case at bar persuade the Court to conclude that an early release from Defendant's 92-month sentence would not comport with the sentencing factors.  *See United States v. Pirosko*, No. 5:12CR327, 2021 WL 4976689, at *2 (N.D. Ohio April 13, 2021) (holding that the § 3553(a) sentencing factors militated against granting the defendant compassionate release because his "behavior leading up to his crimes was not only dangerous but a contributing factor to the proliferation of the child-pornography market"), *aff'd*, No. 21-3383, 2021 WL 8155161 (6th Cir. Sept. 14, 2021).

The remaining factors also weigh against granting Defendant's motion.  There are over eight months remaining on Defendant's thoughtfully imposed sentence.  Early release from incarceration would fail "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  § 3553(a)(2)(A).  The amount of time Defendant has served thus far is not sufficient to serve the purposes of sentencing.  Releasing Defendant at this time would also fail to afford "adequate deterrence," both specific and general, for conspiracy to commit sex trafficking of a minor.  § 3553(a)(2)(B).  The Commission's policy statement on compassionate release motions at § 1B1.13 also requires the movant to show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(a)(2); *see United States v. Draper*, No. 5:22-cr-386, 2024 WL 4591480, at *2 n. 2 (E.D. Pa. Oct. 28, 2024) (denying motion for compassionate release). Nothing offered by Defendant discourages the Court from believing, that at this time, he remains

(4:19CR0715)

a danger to "the safety of any other person and the community," as articulated in § 3142(g).

Section 3142(g)(1) specifically highlights crimes that "involves a minor victim" as being part of

nature and circumstances that can demonstrate a defendant is a danger to the community.

Taken together, the sentencing factors and related guidance, counsel against granting

Defendant an early release.  Defendant's asserted reasons for early release do not outweigh the

significant risks a reduced sentence would pose.  *See United States v. Coffer No. 1:19CR0282,*

*2024 WL 4664692, at *7 (N.D. Ohio Nov. 4, 2024)* (Pearson, J.) (denying motion for

compassionate release based in part on the court's consideration of the § 3553(a) factors), appeal

pending, No. 24-4000 (6th Cir.).

Having carefully considered the entire record and weighed the pertinent sentencing

factors as required, the Court concludes that the § 3553(a) factors weigh against compassionate

release and sentence modification.

## IV.  Conclusion

Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

(Compassionate Release) (ECF No. 92) is denied (1) for failure to satisfy the mandatory statutory

exhaustion requirement and (2) on the merits.

IT IS SO ORDERED.

__March 14, 2025__                     __/s/ Benita Y. Pearson__
Date                                              Benita Y. Pearson
                                                      United States District Judge

15